# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GAIL E. HUNTER,           )
                           )
            **Plaintiff,**    )
                           )   **CIVIL ACTION**
**v.**                             )
                           )   **No. 10-1058-JWL**
                           )
**MICHAEL J. ASTRUE,**     )
**Commissioner of Social Security,**   )
                           )
            **Defendant.**   )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(I), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(I), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the administrative law judge's (ALJ's) residual functional capacity (RFC) assessment, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.     Background

Plaintiff applied for DIB and SSI on October 29, 2007 alleging disability since September 23, 2003.[1]  (R. 7, 125-38).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ).  (R. 7, 50-64, 67-77).  Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ Michael A. Lehr on April 8, 2009.  (R. 18-49).  After the hearing, Plaintiff was referred for a psychological evaluation by Dr. Moeller (R. 266-67) and the report of that evaluation was received into the record along with certain other medical records obtained after the hearing.  (R. 357-452).  On September 8, 2009, the ALJ issued his decision finding that Plaintiff has the RFC to perform her past relevant work as it is generally performed in the economy, is not disabled within the meaning of the Act, and is not entitled to benefits.  (R. 7-14).

Plaintiff disagreed, and sought, but was denied, Appeals Council review of the decision.  (R. 1-3, 17).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.     Legal Standard

---

[1]Plaintiff's applications are dated "October 31, 2007" (R. 125-38), and her SSI application alleges she became disabled on August 23, 2007.  (R. 125).  However, the DIB application alleges Plaintiff became disabled on September 23, 2003 (R. 131-32), and Plaintiff does not claim error in the ALJ's findings, so the court accepts the ALJ's findings that Plaintiff applied for benefits on October 29, 2007, and that Plaintiff alleges disability since September 23, 2003.

The court's jurisdiction and review are guided by the Act.  <u>Wall v. Astrue</u>, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing

42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985)

(quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1)

and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not

only unable to perform her past relevant work, but cannot, considering her age, education,

and work experience, engage in any other substantial gainful work existing in the national

economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20

C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether she has a severe

impairment, and whether the severity of her impairment(s) meets or equals the severity of

any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed

impairment, the Commissioner assesses RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e).

This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ decided this case at step four of the sequential process, and did not determine whether there is other work available in the economy within Plaintiff's capacity.

Plaintiff claims the ALJ erred at step four by failing to make a specific finding regarding the physical and mental demands of Plaintiff's past work as a clerical worker or as a customer service representative, and that he erred in making the RFC assessment by failing to assess any mental limitations, by failing to articulate a function-by-function assessment of Plaintiff's capabilities, by relying on the "medical" opinion of a single decision maker (SDM), and by failing to account for or to discount Dr. Osland's opinion that Plaintiff must periodically alternate sitting and standing. The Commissioner argues that substantial evidence supports the ALJ's RFC assessment: that he performed a function-by-function assessment "as defined in 20 CFR 404.1567(a) and 416.967(a)" (R. 11) and discussed Plaintiff's exertional capacity in the decision; that any error in relying

on the opinion of the SDM was harmless because a medical consultant, Dr. Siemsen, reviewed the SDM opinion and Dr. Siemsen's opinion was consistent with the ALJ's decision; that Dr. Osland's opinion may be properly discounted; and that the ALJ properly found the severity of Plaintiff's mental impairments do not translate into any significant mental limitations. He also argues that the ALJ made specific findings regarding the <u>physical</u> demands of Plaintiff's past work and that the <u>mental</u> demands of past work were not at issue because the ALJ found Plaintiff had no mental limitations.

Plaintiff's brief presents her arguments regarding step four error before her arguments regarding error in assessing RFC. But, because RFC assessment occurs between step three and step four of the sequential evaluation process (or at phase one of the step four evaluation as suggested in <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996); <u>accord</u>, <u>Soc. Sec. Ruling</u> (SSR) 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809, 813 (1983)), and because disability evaluation properly proceeds in accordance with the sequential evaluation process, the court first addresses errors alleged in the RFC assessment. Finding error in the RFC assessment which requires remand, the court finds it premature and unnecessary to address the alleged step four errors.

**III.    RFC Assessment**

The ALJ assessed Plaintiff with the RFC "to perform the <u>full range</u> of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (R. 11) (emphasis added). The regulations cited by the ALJ instruct that sedentary work involves mostly sitting, and that walking and standing are required only occasionally. They provide that sedentary work

never involves lifting more than ten pounds, and occasionally requires lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). At step two, the ALJ applied the psychiatric review technique contained in the regulations at 20 C.F.R. §§ 404.1520a, and 416.920a, to determine the severity of Plaintiff's mental impairments at step two and step three of the sequential evaluation process in accordance with the "paragraph B" criteria of the mental impairments' Listings. (R. 10-11). Applying the "paragraph B" criteria, he found that Plaintiff has mild limitations in activities of daily living; mild limitations in social functioning; no limitations in concentration, persistence, or pace; and no episodes of decompensation; and that, therefore, Plaintiff's mental impairments are not severe. (R. 10-11). He recognized that the "paragraph B" limitations are not an RFC assessment, but went on to note that the RFC he assessed later in the decision "reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." (R. 11).

Therefore, the ALJ found Plaintiff is capable of a <u>full range</u> of sedentary work despite having mild limitations in activities of daily living, and mild limitations in social functioning. And as Plaintiff asserts, the RFC assessed does not contain any specific mental functional limitations. The ALJ also found Dr. Moeller performed a consultative psychological examination and opined that Plaintiff "can do simple routine work." (R. 10) (citing Ex. 19[F] (R. 431-46)). As that finding suggests, Dr. Moeller stated, "At this point, although <u>experiencing a genuine impairment</u>, Ms. Hunter also retains the intellectual abilities as well as sufficient psychological functioning to engage in <u>simple,</u>

gainful employment." (R. 439) (emphases added). Dr. Moeller also noted that Plaintiff's "stream of thought was distinctly tangential. Additional structure was necessary to keep her focused and on task." (R. 438). The ALJ did not discuss this opinion.

As the Commissioner argues, the ALJ found that the mild limitations in daily activities and mild limitations in social functioning did not translate into any significant limitations in mental functioning. However, the ability to engage in simple, gainful employment (which the ALJ acknowledged) is neither obviously nor intuitively equivalent to the ability to engage in a full range of sedentary work, especially if the subject's thinking is tangential and additional structure is necessary to keep her focused (which the ALJ did not even mention). But, the ALJ did not reject Dr. Moeller's limitations; and did not explain how those limitations(to simple, gainful employment; and additional structure to maintain focus) related to the ability to perform a full range of sedentary work. Although the ALJ found at step two that Dr. Moeller's limitation did not produce a "severe" mental impairment, the regulations require that even where an impairment is not "severe," it must be considered along with all other impairments in assessing RFC. 20 C.F.R. §§ 404.1523, 416.923. Moreover, as Plaintiff suggests, the ALJ did not seek vocational expert testimony or cite to any other vocational resource to suggest how much of the sedentary occupational base is reduced by the limitations found by Dr. Moeller. The decision does not reveal how the ALJ considered Plaintiff's mental impairments in this regard. While this error, standing alone, might be harmless because Plaintiff does not claim error in the ALJ's finding that her mental impairment is not

8

severe (has no more than a minimal effect on her ability to perform basic mental work activities), the error does not stand alone.

As Plaintiff claims, the ALJ erroneously relied upon the "medical" opinion of a single decision maker (SDM). The ALJ stated:

> Pursuant to SSR 96-6p, the Administrative Law Judge has considered the opinions rendered by the State agency medical consultants. The record supports, for the most part, the residual functional capacity opinions rendered by those consultants (Exhibit 3F).

(R. 13). Exhibit 3F, cited by the ALJ, is a "Physical Residual Functional Capacity Assessment" form completed by an SDM at the initial consideration level on January 10, 2008. (R. 331). In that form, the SDM determined that Plaintiff is able to lift, carry, push, and/or pull up to ten pounds either occasionally or frequently; is able to stand and/or walk at least two hours in an eight-hour workday; and is able to sit about six hours in an eight-hour workday. (R. 325). The only other limitations found by the SDM were postural: never stoop or crawl; and only occasionally climb, balance, kneel, or crouch. (R. 326).

Despite the ALJ's rather solicitous view of the SDM opinion, courts in this district with one notable exception, have uniformly recognized that an SDM is not a medical professional, and his opinion is worthy of no weight as a medical opinion. Greenfield v. Astrue, No. 09-1173-WEB, 2010 WL 2132057, *4, n.5 (D. Kan. Apr. 26, 2010) (Report & Recommendation, adopted May 27, 2010, 2010 WL 2132061); Cowan v. Astrue, No. 09-1154-WEB, 2010 WL 2131915, *6 (D. Kan. Apr. 9, 2010) (Report &

Recommendation, adopted May 27, 2010, 2010 WL 2132028); Kempel v. Astrue, No. 08-4130-JAR, 2010 WL 581900, *7 (D. Kan. Jan. 4, 2010); Houghtaling v. Astrue, No. 08-2656-KHV-GBC, slip op. at 2, 3, (D. Kan. Nov. 10, 2009); but see, Sawyer v. Astrue, No. 08-2114-KHV, 2009 WL 634666, *7 (D. Kan. March 11, 2009) (relying upon opinion of SDM among other evidence, as "medical evidence that plaintiff can work full-time"). In Sawyer, the single Kansas district court case accepting an SDM opinion as medical evidence, the court did not consider the issue of whether an SDM was a medical professional or whether such an opinion was worthy of weight as a medical opinion. Following the weight of persuasive authority in this district and elsewhere, the court finds that the SDM opinion at issue here (Ex. 3F) is not a medical opinion and is worthy of no weight in the ALJ's analysis. E.g., Stanley v. Astrue, No. 09-20485-CIV, 2009 WL 3060394 (S.D. Fla. Sept. 24, 2009) (remanding with directions not to rely upon determination by SDM); Smith v. Astrue, No. 3:07-cv-1165-J-TEM, 2009 WL 890391 at *11 (M.D. Fla. March 31, 2009) (ALJ improperly classified SDM as physician); Burnham v. Astrue, No. 06-124-P-H, 2007 WL 951386 at *2 (D. Me. March 27, 2007) (ALJ wrongly accorded weight to opinion of SDM).

The Commissioner acknowledged that it was error to rely upon the opinion of the SDM, but argued that the error was harmless because Dr. Siemsen reviewed the RFC assessment and found that an insufficient evidence denial was appropriate, and "Thus, the state agency medical consultant's opinion was consistent with the ALJ's decision." (Comm'r Br. 7). The court does not agree.

As the Commissioner argued, Dr. Siemsen reviewed the evidence during the reconsideration review, noted that Plaintiff failed to attend a scheduled consultative examination, that the disability examiner was unable to contact Plaintiff regarding the missed examination, and that Plaintiff failed to respond to a letter regarding the issue. (R. 332). Dr. Siemsen concluded, "Due to clmt's noncooperation, insufficient evidence denial is indicated." Id. Nowhere in Dr. Siemsen's report did he indicate that he had even seen the SDM's RFC form. There is no indication he reviewed it or that he agreed with it. Moreover, the "Reconsideration Notice of Disapproved Claims" whereby Plaintiff was informed that her claims had been denied on reconsideration stated, "There is insufficient evidence to show an impairment that would prevent work," which is consistent with Dr. Siemsen's finding. (R. 67).

Conversely, the ALJ affirmatively determined that Plaintiff has the RFC for a full range of sedentary work. (R. 11). To the extent that Dr. Siemsen's opinion resulted in denial of Plaintiff's claims, that opinion is consistent with the ALJ's finding, which also resulted in a denial. However, there is no suggestion in the record that either the ALJ and Dr. Siemsen on the one hand, or the SDM and Dr. Siemsen on the other hand reached consistent conclusions regarding Plaintiff's RFC. In fact, there is no evidence in the record suggesting that Dr. Siemsen ever reached a medical opinion regarding Plaintiff's RFC. Rather, the evidence shows that Dr. Siemsen reached the administrative conclusion that there was insufficient evidence in the record at that time to determine Plaintiff was

disabled.  Thus, the ALJ erred in relying upon the opinion of the SDM, and Dr. Siemsen's

determination does not render the error harmless.

> The ALJ also discussed his evaluation of Dr. Osland's opinion:
>
> The claimant's treating physician John Osland, M.D. filled out a residual
> functional capacity form one month prior to her most recent right knee
> surgery stating that the claimant can perform sedentary work (14 F).  He
> expected the claimant to improve with the upcoming treatment.

(R. 13).  Plaintiff appears to accept the ALJ's characterization of Dr. Osland's opinion

that Plaintiff can perform sedentary exertional level work, but she objects that Dr. Osland

also stated Plaintiff "must periodically alternate sitting and standing to relieve pain and

discomfort," and argues that the ALJ did not include a limitation to alternate sitting and

standing, or resolve the discrepancy between the ALJ's RFC assessment and Dr. Osland's

opinion.  (Pl. Br. 9-10) (quoting (R. 380)).

  As Plaintiff argues, SSR 96–9p establishes that when a need to alternate sitting

and standing cannot be accommodated by normal work breaks, "the occupational base for

a full range of unskilled sedentary work will be eroded."  West's Soc. Sec. Reporting

Serv., Rulings 158 (Supp. 2010).  Medical opinions may not be ignored and will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv.,

Rulings 123-24 (Supp. 2010).  Moreover, SSR 96-8p provides narrative discussion

requirements in an RFC assessment which must include an explanation how any

ambiguities and material inconsistencies in the evidence were considered and resolved.

SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.

Pursuant to the regulations and rulings, the ALJ cannot ignore Dr. Osland's opinion that Plaintiff must alternate sitting and standing, and in light of SSR 96-9p he must explain how he resolved the ambiguity between finding Plaintiff capable of a full range of sedentary work, and Dr. Osland's limitation to alternate sitting and standing. Moreover, he must explain why he did not adopt Dr. Osland's opinion that Plaintiff must alternate sitting and standing. The ALJ has met none of these requirements, and his failure to do so is error.

The Commissioner argues that the ALJ properly did not adopt Dr. Osland's limitations, but found Dr. Osland's opinion supported the ALJ's RFC finding. (Comm'r Br. 7-8). However, as discussed above, such a finding requires resolution of the ambiguities presented, and an explanation why the ALJ did not adopt Dr. Osland's opinion. The Commissioner also argues that the evidence suggests not all of Dr. Osland's form was completed by Dr. Osland, that such forms are of dubious value, and that "Dr. Osland's narrative statement supported the finding that Plaintiff could perform a full range of sedentary work." (Comm'r Br. 7-8). While there might be an evidentiary basis for the Commissioner's argument, that argument is not what happened here.

The court is charged with reviewing the Commissioner's final decision, in this case, the decision of the ALJ. It may not substitute its judgment for that of the ALJ. An

ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe, 755 F.2d at 149 n.16. A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). Here, the ALJ did not discount Dr. Osland's form and accept his narrative statement. Therefore, the court may not affirm at counsel's suggestion on the basis that he might have done so. The ALJ erred in weighing Dr. Osland's opinion.

As the court found above, the ALJ (1) did not properly explain why Plaintiff's restriction to simple employment and tangential thinking would nonetheless allow a full range of sedentary work; (2) improperly relied upon the opinion of an SDM as a medical opinion; and (3) improperly weighed Dr. Osland's opinion. These errors, when considered together, also suggest that the ALJ did not perform a function-by-function assessment of Plaintiff's physical and mental capacities as required by the regulations and the rulings before he expressed an RFC in terms of the sedentary exertional category.

In determining RFC, the regulations provide that the Commissioner will consider plaintiff's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). The regulations explain what is to be considered in assessing physical abilities, mental abilities, and other abilities affected by impairments. Id. §§ 404.1545(b, c, & d), 416.945(b, c, & d). The regulations explain

certain abilities, functions, or activities which are involved in work, and which will be considered when assessing RFC. These include physical abilities: sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities: understanding, remembering, carrying out instructions, and responding to supervision, to co-workers, and to work pressures in a work setting; and other abilities such as vision, hearing, or other senses which may cause limitations. Id.

Although the ALJ summarized the record evidence in his RFC analysis (R. 11-13), he did not discuss limitations in the specific functional abilities which are discussed above. Beyond his conclusory statement that Plaintiff "cannot perform more than sedentary work because lifting over 10 pounds and walking or standing over 2 hours in an 8 hour work day exacerbates her knee and leg pain" (R. 13), the ALJ did not state any specific findings regarding Plaintiff's physical abilities, mental abilities, or other abilities. When considered in conjunction with the ALJ's errors in considering the opinions regarding Plaintiff's mental abilities and regarding her need to alternate sitting and standing, it becomes apparent the ALJ failed to perform a function-by-function assessment of Plaintiff's abilities before summarily concluding Plaintiff can perform a full range of sedentary work. Remand is necessary for the Commissioner to properly evaluate the opinion evidence as discussed herein, perform a proper function-by-function assessment of Plaintiff's abilities and make a proper RFC assessment based upon that assessment.

Because the ALJ must make a proper RFC assessment on remand, it will be necessary thereafter to reevaluate step four and step five of the sequential evaluation process to determine whether Plaintiff is disabled within the meaning of the Act. The court will not presume in the circumstances as they now exist to instruct the Commissioner regarding his findings in a proper step four analysis on remand. Suffice it to say that Plaintiff may make any arguments regarding consideration of the physical and mental demands of her past relevant work to the Commissioner on remand.

**IT IS THEREFORE ORDERED** that the decision is REVERSED, and judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 24th day of February 2011, at Kansas City, Kansas.


                                        s:/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**